In re **FORUM HEALTH,**
et al., Debtors.

No. 09–40795.

United States Bankruptcy Court,
N.D. Ohio.

April 7, 2010.

---

Matthew A. Salerno, Melissa Asbrock, Paul W. Linehan, Shawn M. Riley, McDonald Hopkins LLC, Cleveland, OH, Michael Gallo, Timothy M. Reardon, Nadler Nadler & Burdman Co., L.P.A., Youngstown, OH, for Debtors.

## MEMORANDUM OPINION REGARDING DEBTORS' SEVERANCE MOTION

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment ("Severance Motion") (Doc. # 572) filed by Debtors Forum Health, *et al.*, on November 25, 2009. Pursuant to the Severance Motion, Debtors seek authority to make a severance payment in the amount of $18,126.00 ("Proposed Severance Payment") to Debtors' former CEO, Walter "Buzz" Pishkur.

On December 30, 2009, the United States Trustee for Region 9 ("UST") filed United States Trustee's Limited Objection to Debtors' Motion for an Order Pursuant

to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment (Doc. # 615). On January 7, 2010, the Official Committee of Unsecured Creditors filed Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment (Doc. # 619).

The UST and Committee objected to the Severance Motion on the basis that Debtors' Proposed Severance Payment to Mr. Pishkur is not based on a program that is generally applicable to all full-time employees, as required by § 503(c)(2). The UST also challenged whether the amount of the Proposed Severance Payment exceeded the cap set forth in § 503(c)(2)(B). Although the Committee stated that it did not have any reason to believe that the Proposed Severance Payment exceeded the applicable statutory cap, the Committee further objected to the Severance Motion on the grounds that Mr. Pishkur was not involuntarily separated from employment, as required by Debtors' policy.

The Court held a hearing on the Severance Motion on January 12, 2010, at which Debtors, the Committee, and the UST were all present. In response to the Committee's request, the Court set the Severance Motion for an evidentiary hearing on February 23, 2010. Thereafter, on February 17, 2010, the Committee filed Notice of Withdrawal of Request for Evidentiary Hearing Regarding the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment (Doc. # 663). On February 22, 2010, Debtors, the UST and the Committee filed Stipulation of Fact Regarding the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment (Doc. # 670), which provided that the three-page document attached thereto, titled Forum Health Standard

Policy & Procedure Instructions, Subject: Separation of Employment—Reduction in Force ("Separation Policy"), constituted the policy upon which the Debtors rely to make the Proposed Severance Payment. On March 9, 2010, Debtors, the UST, and the Committee filed Stipulation of Facts Regarding the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment ("Stipulation of Facts") (Doc. # 691). On April 1, 2010, the parties filed a supplement ("Supplement") (Doc. # 730) to the Stipulation of Facts in which they further stipulated that, post-petition, Debtors terminated 18 union employees due to a workforce reduction and another 21 union employees due to position elimination; none of these union employees received severance pay.

For the reasons set forth below the Court will deny the Severance Motion.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. FACTS

Debtors filed a voluntary petition pursuant to chapter 11 of Title 11 of the United States Code on March 16, 2009. In connection with the Court's consideration of the Severance Motion, the parties stipulate to the following facts:

1. The Proposed Severance Payment is within the cap imposed by 11 U.S.C. § 503(c)(2)(B). (Stip. of Facts ¶ 1.)

2. Mr. Pishkur's separation from employment occurred October 9, 2009,

and was not due to a workforce reduction or position elimination. (Stip. of Facts ¶¶ 2 and 7.)

3. The Separation Policy does not apply to Debtors' union employees and Debtors are not aware of any other policy that provides for severance payments. (Stip. of Fact ¶ 3.)

4. As of July 3, 2009, Debtors had 2,786 union employees and 902 non-union employees. (Stip. of Fact ¶ 4.)

5. Thirty-nine (39) union employees were terminated post-petition due to a workforce reduction or position elimination. (Supp. ¶¶ 1 and 2.)

6. No union employee who was terminated post-petition due to a workforce reduction or position elimination has received severance pay. (Stip. of Fact ¶ 5, Supp. ¶ 4.)

7. Mr. Pishkur was employed by Debtor Forum Health pursuant to an individual employment agreement that provided for severance benefits. (Stip. of Fact ¶ 6.)

8. The Debtors rely on the Separation Policy to make the Proposed Severance Payment. (Stip. of Fact ¶ 3.)

## II. ANALYSIS

A debtor's ability to make a severance payment to an insider is limited by 11 U.S.C. § 503(c)(2). Prior to his separation from employment, Mr. Pishkur was the CEO of Debtors. As a consequence, there is no question that Mr. Pishkur falls within the definition of "insider" and, accordingly, the limitations on severance pay in § 503(c)(2) apply to him.[1] Section 503(c)(2) provides:

> (c) ... there shall neither be allowed, nor paid—
>
> ...
>
> (2) a severance payment to an insider of the debtor, unless—
>
> > (A) the payment is part of a program that is generally applicable to all full-time employees; and
> >
> > (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made;

Thus, a debtor must satisfy both parts of the statute in order to make a severance payment to an insider. The parties have stipulated that the second part of § 503(c)(2) has been met, i.e., the Proposed Severance Payment is not greater than the amount allowed in § 503(c)(2)(B). (Stip. of Fact ¶ 1.) As a consequence, the Court need only determine whether Debtors' Proposed Severance Payment is in accordance with a program generally applicable to all full-time employees, as set forth in § 503(c)(2)(A).

The parties dispute whether Debtors have a program for the payment of severance that is generally applicable to all full-time employees. The parties stipulate that Mr. Pishkur was covered by an employment contract that provided for the payment of severance benefits. (Stip. of Fact ¶ 6.) The first area of dispute[2] is whether, by virtue of his individual em-

---

**1.** Section 101(31)(B)(ii) defines "insider" to include "an officer of the debtor" if the debtor is a corporation. 11 U.S.C. § 101 (West 2009).

**2.** Another area of disagreement concerns the voluntary/involuntary nature of Mr. Pishkur's separation from employment. The parties left that determination up to the Court, but did not present the Court with any further facts surrounding Mr. Pishkur's separation from employment despite being apprised of the need to do so. At the hearing on January 12, 2010, this Court stated:

> [T]his Court believes that there [are] sufficient facts that have already been put on the record that Mr. Pishkur's separation was done voluntarily only in the sense that he was gracious as he was forced out. ...

ployment agreement, Mr. Pishkur is outside the parameters of Debtors' severance program. Debtors counter that their severance program encompasses both the Separation Policy and each individual employment agreement. Thus, Debtors argue that Mr. Pishkur is covered by the severance program. But for the statutory cap, Debtors contend that Mr. Pishkur would be entitled to receive $350,000.00 in severance benefits. As a consequence of the monetary limitation in § 503(c)(2)(B), however, Mr. Pishkur's severance payment is limited to approximately $18,000.00. The UST argues that individual employment agreements are specifically excepted from the Separation Policy. As a consequence, the UST posits that Mr. Pishkur is expressly not covered by the Debtors' severance program. The Committee did not weigh in on this particular argument.

This Court could not find any case that has determined what is necessary for a program to be "generally applicable to all full-time employees." The statute refers to a "program" rather than to a "policy," apparently contemplating that a court may have to look to more than one policy to find a program that is generally applicable to all full-time employees.[3] Collier on Bankruptcy postulates that:

> It is a rare severance plan that will apply to all full-time employees of a large company. For example, employees covered by collective bargaining agreements are likely to be covered by a different severance plan than management employees. The purpose of the limitation [in 11 U.S.C. § 503(c)(2)(A)], however, is to ensure that the insider severance is not specially created for those insiders and that a severance program is in effect for all full-time employees. Accordingly, it would make sense to interpret the reference to a severance "program" to mean a series of plans as long as the series covers all full-time employees of the debtor.

4 Collier on Bankruptcy ¶ 503.17[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The Separation Policy provides in two separate places that it supersedes and replaces all other severance pay plans, policies or arrangements except individual employment agreements between the employer and employee. (Sep. Pol. at 1 and 3.) The Separation Policy, on its face,

---

So the Court finds that Mr. Pishkur's separation under the circumstances as I know it, what is actually already on the record, would be involuntary. But if you think that there are additional facts that need to be brought to the Court because I do not have the whole picture, then I will reserve that understanding until there is an entire picture. But from what is on the record the Court would find that his separation was involuntary.

(Hrg. Tr. at 15–16, Doc. # 641.) Even counsel for the Committee conceded that: "[M]y view of ... what happened ... is he probably resigned under pressure." (*Id.* at 15.) As a consequence, this Court continues to find that Mr. Pishkur's separation from employment was involuntary.

**3.** Dictionary definitions are not particularly helpful in this instance. Black's Law Dictionary defines "program" as (i) an agenda for a meeting or (ii) a speech. Black's Law Dictionary 1248 (8th ed.2004). Black's defines "policy" as (i) general principles by which government manages public affairs, (ii) a document containing a contract, and (iii) a type of lottery. *Id.* at 1196. None of these definitions are applicable to § 503(c)(2).

One of the definitions of "program" in Webster's New World College Dictionary is "a plan or procedure for dealing with some matter." Webster's New World College Dictionary (4th ed.2010), *available at* www.yourdictionary.com/program. Webster's defines "policy", among other definitions, as (i) "wise, expedient, or prudent conduct or management," and (ii) "a principle, plan, or course of action, as pursued by a government, organization, individual, etc." *Id., available at* www.yourdictionary.com/policy.

applies to all Eligible Employees[4] except those employees that have individual employment agreements with severance payment provisions. This Court finds that Debtors' interpretation is persuasive—*i.e.*, that the Separation Policy and each individual employment agreement collectively constitute the severance "program" for Eligible Employees. The Separation Policy itself does not have to be generally applicable to all full-time employees, as long as Debtors have a *program* that so applies. Accordingly, this Court finds that Mr. Pishkur is covered by Debtors' severance program notwithstanding his individual employment agreement.

The Court's inquiry concerning the general applicability of Debtors' severance program, however, must continue. The Separation Policy expressly covers only Eligible Employees. In other words, the Separation Policy expressly excludes those employees referred to as "union employees" in the Stipulation of Facts and Supplement. Debtors stipulated that they are not aware of any other policy that provides for severance payments. (Stip. of Facts ¶ 3.) The Committee and the UST argue that the Separation Policy's exclusion of union employees requires the inescapable conclusion that it is not "generally applicable to all full-time employees." The parties have stipulated that, as of July 3, 2009, approximately 76% of Debtors' workforce consisted of union employees. (*See Id.* ¶ 4.) The parties have also stipulated that union employees who have lost their jobs through reductions in force or position elimination have not received severance pay. (*Id.* ¶ 5; Supp. ¶ 4.)

Section 503(c)(2) refers to all full-time employees, not just all full-time non-union employees. If Debtors' collective bargaining agreements provided for severance benefits to union employees, this Court could consider such contracts in determining if Debtors had a program that was generally applicable to all full-time employees. Here, however, approximately three-quarters of Debtors' workforce is unionized and excluded from the severance program upon which Debtors rely to make the Proposed Severance Payment to Mr. Pishkur. This Court finds that the exclusion of the majority of full-time employees from the severance program prohibits the program from meeting the statutory definition of being "a program that is generally applicable to *all* full-time employees[.]" 11 U.S.C. § 503(c)(2)(A) (West 2009) (emphasis added).

Accordingly, this Court finds and holds that Debtors' severance program, although generally applicable to all full-time non-union employees, is not generally applicable to all full-time employees. As a consequence, the Court cannot authorize Debtors to make the Proposed Severance Payment to Mr. Pishkur under § 503(c)(2).

An appropriate order will follow.

### ORDER DENYING DEBTORS' SEVERANCE MOTION

This cause is before the Court on Debtors' Motion for an Order Pursuant to 11 U.S.C. § 503(c)(2) Authorizing the Debtors to Make a Severance Payment ("Severance Motion") (Doc. # 572) filed by Debtors Forum Health, *et al.*, on November 25, 2009. For the reasons stated in the Court's Memorandum Opinion Regarding Debtors' Severance Motion entered this date, the Severance Motion is hereby denied.

---

4. "Eligible Employee" means "an employee that is not represented by a collective bargaining unit within Forum Health or its affiliated entities and is classified as a full-time employee." (Sep. Pol. at 1.)